J-S33019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
TERRELLE JOHNSON :
:
Appellant : No. 67 EDA 2025

Appeal from the Judgment of Sentence Entered November 25, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003184-2021

BEFORE: BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.: **FILED MARCH 5, 2026**

Appellant Terrelle Johnson appeals from the judgment of sentence imposed following his convictions for attempted murder, aggravated assault, conspiracy to commit aggravated assault, possession of a firearm prohibited, possession of a weapon, simple assault, and recklessly endangering another person (REAP).[1] Appellant challenges the sufficiency and the weight of the evidence, the trial court's orders denying Appellant's pre-trial motions (including motions to suppress), the trial court's evidentiary rulings, and the discretionary aspects of his sentence. After review, we affirm Appellant's convictions but vacate his judgment of sentence and remand for resentencing.

The trial court summarized the underlying facts of this case as follows:

_____

[1] 18 Pa.C.S. §§ 901(a), 2705; 2702(a)(1); 903, 2702(a)(2); 6105(a)(1); 907(b); 2701(a)(1); 2705.

On December 7, 2020 around 2:20 in the afternoon, then Philadelphia Police Officer Michael Bernard responded to the report of a shooting between Cleveland Street and 18th Street in Philadelphia. Upon arriving at the scene, Officer Bernard observed a gunshot victim bleeding from the face and screaming. Officer Bernard performed a "scoop" and transported the victim to the nearest trauma center, Temple Hospital. Officer Bernard identified the victim as Robert Morgan. Mr. Morgan had been shot in the right side of his face, his abdomen, and in the rear of his left thigh. Mr. Morgan had no information to give the police about who may have shot him.

Mr. Morgan was admitted to the hospital on December 7, 2020 and was discharged on January 14, 2021. N.T. 9/10/24 at 38. He was diagnosed with respiratory failure requiring intubation that caused sepsis, a fracture on the right side of his face of the lateral orbital wall, paralysis of the vocal cord and larynx, a fracture to the base of the skull and tibia, and injuries to his intestines. These diagnoses required multiple operations over several months.

Philadelphia Detective James Waring and his partner, Detective James Callahan, were assigned to investigate the shooting. Detectives Waring and Callahan searched for evidence around the scene. [The] detectives searched near Mr. Morgan's blood splatter and noted that a gun, fired cartridge casings (FCCs) nor live rounds were located near the splatter.

Across the street from the blood splatter, Detectives Waring and Callahan located nine-millimeter FCCs, a [5.]7-millimeter live round, and a 5.7-millimeter FCC. Detective Waring testified that in the thousands of shooting cases that he investigated over his 28 years with the Philadelphia Police Department, he has only come across 5.7-millimeter rounds two or three times. The detectives applied for and secured a search warrant for the surveillance video of the shooting. There was a camera on the corner where the shooting occurred as well as inside an adjacent grocery store. The video of the corner show[ed] that one of the suspected shooters went in and out of a home at 2402 North Cleveland Street. The suspect exit[ed] the home at 2402 North Cleveland Street, pull[ed] out a gun and fire[d] in the direction of where the victim was found shot. The suspect was wearing a shiny black coat with a hood and a tear in the arm and black pants with a red stripe down the side. Just before the shooting, the same actor was seen in the grocery store at the intersection where the shooting occurred. In the security camera footage from the

grocery store, the actor was seen pulling a firearm from his waistband, checking the magazine, and showing the firearm to another person.

Based on the still photographs from the grocery store footage, Philadelphia Police Officer [Kenneth] Berger identified the man in the shiny black coat as [Appellant]. Officer Berger had a previous interaction with Appellant, although at trial he did not testify to the details of that encounter. Additionally, Detectives Waring and Callahan focused their search for the shooters on 2402 North Cleveland Street because one of the shooters was seen entering and exiting the home right before the shooting. [Appellant] was associated with the address.

Detectives Waring and Callahan secured search warrants for 2402 North Cleveland Street. When the search warrant was executed, Appellant was inside the residence. [Appellant] was taken into custody at 2402 North Cleveland Street. The home was searched and there was mail and documents with [Appellant's] name in one of the bedrooms. A black hooded coat with a rip on the upper right arm was found in the bedroom. Additionally, an empty box of 5.7-millimeter ammunition was found in the room. After Appellant was arrested, the Detectives compared his bald spot to the bald spot of the person seen on the surveillance videos around the time of the shooting. It appeared to the Detectives that the bald spot was the same. With the identification made by Officer Berger along with the physical evidence that was recovered, the Detectives were confident that Appellant was one of Mr. Morgan's shooters.

After Appellant was arrested, Detectives Waring and Callahan advised Appellant of his ***Miranda***[2] rights. Appellant waived his right to counsel and agreed to proceed with an interview. He identified himself in the footage from the grocery store and even admitted that he had a firearm in the store just prior to the shooting.

Trial Ct. Op., 5/20/25, at 1-5 (citations omitted and some formatting altered).

On September 11, 2024, the jury convicted Appellant of attempted murder, aggravated assault, conspiracy to commit aggravated assault,

_____

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

possession of a weapon, simple assault, and REAP. That same day, the trial court also convicted Appellant of possession of a firearm prohibited. On November 25, 2024, the trial court sentenced Appellant to a term of five to ten years' incarceration for attempted murder and a concurrent term of ten years' probation for aggravated assault. The trial court imposed no further penalty for the remaining convictions.

Despite being represented by counsel, Appellant filed a *pro se* post-sentence motion seeking reconsideration of sentence on December 5, 2024. Appellant filed a timely, counselled notice of appeal on December 16, 2024.[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

_____

[3] The trial court did not enter an order disposing of Appellant's *pro se* post-sentence motion. Generally, "[i]f post-sentencing motions are timely filed, [] the judgment of sentence does not become final for purposes of appeal until the trial court disposes of the motion, or the motion is denied by operation of law." **Commonwealth v. Rojas**, 874 A.2d 638, 642 (Pa. Super. 2005) (citations and emphasis omitted). However, because Appellant was represented by counsel, his *pro se* post-sentence motion was a legal nullity. **See Commonwealth v. Nischan**, 928 A.2d 349, 355 (Pa. Super. 2007) (explaining that there no right to hybrid representation and a *pro se* motion filed while the defendant was represented by counsel is a legal nullity). Therefore, we conclude that the appeal is properly before this Court. **See** Pa.R.A.P. 903(c)(3) (providing that "[i]n a criminal case in which no post-sentence motion has been filed, the notice of appeal shall be filed within 30 days of the imposition of the judgment of sentence in open court").

- 4 -

On appeal, Appellant raises nineteen issues,[4,5] which we reorder and restate as follows:

1. Whether the evidence was sufficient to establish all of the elements of attempted murder.

2. Whether the evidence was sufficient to establish all of the elements of aggravated assault.

3. Whether the evidence was sufficient to establish all of the elements of possession of a firearm prohibited.

4. Whether the evidence was sufficient to establish all of the elements of conspiracy to commit aggravated assault.

_____

[4] We refer to the oft-cited quote from the late Judge Aldisert of the Third Circuit:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court, it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors . . . When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

*Commonwealth v. Lutes*, 793 A.2d 949, 955 n.1 (Pa. Super. 2002) (citations omitted).

[5] Several of the issues Appellant has raised are duplicative. Specifically, paragraphs 11 and 23 of Appellant's statement of the questions involved are both challenges to the weight of the evidence. *See* Appellant's Brief at 14, 20. Also paragraphs 16 and 19 both concern suppression of evidence obtained from a search of the residence located at 2402 North Cleveland Street. *See id.* at 16-19. Paragraphs 20 and 21 address the denial of a motion to preclude the admission of evidence that the Commonwealth purportedly failed to produce in discovery. *See id.* at 19-20. Lastly, paragraphs 24, 25, and 26 are all challenges to the discretionary aspects of the sentence. *See id.* at 21.

5. Whether the evidence was sufficient to establish all of the elements of possession of a weapon.

6. Whether the evidence was sufficient to establish all of the elements of simple assault.

7. Whether the evidence was sufficient to establish all of the elements of REAP

8. Whether the evidence was sufficient to identify Appellant as one of the two shooters.

9. Whether the Appellant's convictions are against the weight of the evidence.

10. Whether the trial court erred by denying Appellant's motion to dismiss the charges pursuant to Pa.R.Crim.P. 600(A).

11. Whether the trial court erred by denying Appellant's motion to quash the charges of attempted murder and aggravated assault.

12. Whether the trial court erred by denying Appellant's motion to suppress his statements.

13. Whether the trial court erred by denying Appellant's motion to suppress evidence obtained pursuant on an illegal arrest.

14. Whether the trial court erred by denying Appellant's motion to suppress evidence obtained from a search of the residence located at 2402 North Cleveland Street.

15. Whether the trial court erred by denying Appellant's motion *in limine* to exclude Officer Berger's testimony about his prior encounter with Appellant.

16. Whether the trial court erred by denying Appellant's motion to exclude evidence that the Commonwealth failed to produce in discovery.

17. Whether the trial court erred by denying Appellant's motion *in limine* to exclude Detective Waring and Officer Berger's testimony identifying Appellant as improper lay opinion.

18. Whether the trial court erred by denying Appellant's motion *in limine* to exclude video evidence.

19. Whether the trial court abused its discretion in sentencing Appellant.

Appellant's Brief at 12-21.[6]

## Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence supporting his convictions. *Id.* at 33-37. Specifically, Appellant claims that the Commonwealth failed to prove that Appellant had the specific intent to kill the victim or that Appellant took a substantial step towards the commission of a crime. *See id.* at 36. Further, Appellant notes that the victim was not able to identify the shooters. *See id.* Appellant also contends that while 5.7-millimeter ammunition was found in his residence, there was no evidence that the victim had been shot with 5.7-millimeter bullets. *See id.* at 37. Appellant claims that there was no DNA evidence or fingerprints on the fired cartridge casings recovered from the scene of the shooting. *See id.* Lastly, Appellant argues that Detective Waring was improperly allowed to offer an opinion identifying Appellant in a video. *See id.* at 36.

Before reaching the merits of this claim, we must address whether the claim is preserved for our review. *See Commonwealth v. Edmondson*, 718 A.2d 751, 753 n.7 (Pa. 1998) (explaining that appellate courts may raise the

---

[6] Although Appellant raised claims challenging the probable cause supporting the search warrant for 2402 North Cleveland Street, Appellant has not presented any argument in support of this claim in his appellate brief. We conclude that Appellant has abandoned these issues, and, therefore, they are waived. *See Commonwealth v. Felder*, 247 A.3d 14, 20 (Pa. Super. 2021) (stating that "an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation and emphasis omitted)).

issue of waiver *sua sponte*). "[T]he applicability of waiver principles . . . is a question of law, over which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Barbour***, 189 A.3d 944, 954 (Pa. 2018) (citations omitted).

It is well settled that a vague challenge to the sufficiency of the evidence may result in waiver. ***See Commonwealth v. Roche***, 153 A.3d 1063, 1072 (Pa. Super. 2017). This is particularly important where the defendant was convicted of multiple crimes, which each contain multiple elements that the Commonwealth must prove beyond a reasonable doubt. ***See Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013). However, where the evidence is "relatively straightforward," and the trial court addressed the merits of a defendant's claim, we may decline to find waiver. ***Commonwealth v. Laboy***, 936 A.2d 1058, 1060 (Pa. 2007) (*per curiam*).

Additionally, any issues identified in an appellant's statement of questions presented that were not set forth in the argument section of an appellant's brief are deemed abandoned and, therefore, waived on appeal. ***See Commonwealth v. Heggins***, 809 A.2d 908, 912 n.2 (Pa. Super. 2002); ***see also Commonwealth v. Taylor***, 277 A.3d 577, 591 (Pa. Super. 2022) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review[,] that claim is waived" (citation omitted and some formatting altered)).

- 8 -

Here, the trial court suggested that Appellant's sufficiency-of-the-evidence claims are waived because Appellant failed to identity the specific elements he was challenging on appeal. *See* Trial Ct. Op. at 7-8. Nevertheless, the trial court also addressed the merits of Appellant's sufficiency claims. *See id.* at 8-17.

However, Appellant failed to present any argument in his appellate brief regarding the sufficiency of the evidence for his convictions for aggravated assault, conspiracy to commit aggravated assault, possession of a firearm prohibited, possession of a weapon, simple assault, and REAP. Accordingly, these claims are waived for lack of development. *See Heggins*, 809 A.2d at 912 n.2; *see also Taylor*, 277 A.3d at 591. Therefore, we only address the merits of Appellant's sufficiency challenges to his attempted murder conviction and to the identification of him as the perpetrator.

Our standard of review for challenges to the sufficiency of the evidence is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence

establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Wright*, 255 A.3d 542, 552 (Pa. Super. 2021) (citation omitted and formatting altered). "Importantly, the fact finder, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* (citation omitted and formatting altered).

Additionally, when "evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005) (citations and quotation marks omitted); *see also Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa. Super. 2008) (explaining that when reviewing a sufficiency claim "we must evaluate the entire record and consider all the evidence actually received" (citation omitted)).

This Court has stated:

Criminal attempt to murder is defined by reading the attempt statute, 18 Pa.C.S. § 901(a), in conjunction with the [first-degree] murder statute, 18 Pa.C.S. § 2502(a). . . . In sum, attempted murder is composed of two primary elements. The *mens rea* element of the offense is specific intent to kill, which is identical

- 10 -

to the *mens rea* element of murder in the first degree. The *actus reus* element of the offense is the commission of one or more acts which collectively constitute a substantial step toward the commission of a killing.

***Commonwealth v. Predmore***, 199 A.3d 925, 929 (Pa. Super. 2018) (*en banc*) (footnote and some citations omitted, and some formatting altered).

"The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence." ***Jackson***, 955 A.2d at 444 (citation omitted). Additionally, "it is axiomatic that specific intent to kill **may** be inferred from the use of a deadly weapon on a vital part of the victim's body." ***Predmore***, 199 A.3d at 931 (citation omitted, some formatting altered, and emphasis in original); ***see also Commonwealth v. Talbert***, 129 A.3d 536, 543 (Pa. Super. 2015) (explaining that the head is a vital part of the body).

This Court has held that, "[i]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes. Evidence of identification need not be positive and certain to sustain a conviction." ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa. Super. 2018) (citations and quotation marks omitted).

Here, the trial court explained:

There is sufficient evidence to support Appellant's convictions of attempted murder . . . . In this case, just before the shooting, there is video of Appellant entering and exiting a home repeatedly on the same corner [where] Mr. Morgan was shot. Appellant also pulls firearm out of his waistband and inspects the magazine and places the firearm back into his waistband. A few minutes later,

Mr. Morgan is shot in the face, stomach and leg. There were multiple FCCs from two different firearms found on the corner across from where Mr. Morgan was found shot. The rare 5.7-millimeter ammunition box was found in Appellant's bedroom as well as the distinctive jacket and pants that Appellant was wearing on the day of the shooting.

\* \* \*

Appellant and another unknown actor stood in the same spot and each aimed and fired their firearms at Mr. Morgan. There were two different size FCCs discovered where Appellant and the other actor stood indicating that there were two firearms discharged from the same spot. While there is no direct evidence that Appellant expressly agreed with the other actor to shoot Mr. Morgan, the two stood on the same corner and each discharged their firearms, striking Mr. Morgan who was seriously injured. . . .

Mr. Morgan was shot in the face, stomach, and leg. The face and stomach are vital parts of the body. Based on Mr. Morgan's medical records, he was in the hospital for over a month and had to get several surgeries and procedures to treat his injuries. Therefore, it was proper for the jury to infer specific intent to kill and there was sufficient evidence for the convict Appellant of attempted murder . . . .

\* \* \*

There was sufficient evidence for the identification of Appellant to be made. The police officers and detectives explained how the identification was made and neither was the sole identification of Appellant. Officer Berger identified Appellant based on his prior interaction with Appellant.

Detectives investigated the house and connected Appellant to the home. Further, Appellant identified himself in video that the detectives showed him in his post-arrest interview.

Trial Ct. Op. at 14-17 (some formatting altered).

Based on our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the

trial court's conclusion that there was sufficient evidence to support Appellant's conviction for attempted murder. ***See Wright***, 255 A.3d at 552.

Specifically, security camera footage showed that Appellant was wearing a shiny black coat with a tear on the sleeve and black pants with a vertical red stripe. ***See*** N.T. Trial, 9/9/24, at 86-87; ***see also*** Ex. C-51. The video also showed that Appellant pulled a handgun from his waistband inside a grocery store, removed the magazine from the gun and reinserted the magazine into the gun. ***See*** N.T. Trial, 9/9/24, at 87; ***see also*** Ex. C-51. Appellant admitted that he was the person wearing a shiny black coat in the security camera footage inside the grocery store. ***See*** N.T. Trial, 9/10/24, at 13-14; ***see also*** Ex. C-52. Appellant fired in the direction of the victim, and police found both a 5.7-millimeter fired cartridge casing and a 5.7-millimeter live round near where Appellant was standing in the video. ***See*** N.T. Trial, 9/9/24, at 70-71, 74, 87-88; ***see also*** Ex. C-51. Police executed a search warrant at 2402 North Cleaveland Street three weeks after the shooting. ***See*** N.T. Trial, 9/9/24, at 91-94; ***see also*** Ex. C-21. During that search, Appellant was arrested. ***See*** N.T. Trial, 9/9/24, at 94. Further, during the search, police found a black hooded coat with a tear on the upper right sleeve and an empty box of 5.7-millimeter ammunition. ***See*** N.T. Trial, 9/9/24, at 97-100; ***see also*** Ex. C-28, C-31, C-33K, C-33L. Detective Waring described 5.7-millimeter as a rare type of ammunition that he has only seen used two or three times in his career. ***See*** N.T. Trial, 9/9/24, at 66.

Further, as stated above, this Court does not review a diminished record when evaluating the sufficiency of the evidence; therefore, Appellant's claim that Detective Waring offered inadmissible lay opinion testimony identifying the person in the video compilation as Appellant is not relevant to our analysis. *See Gray*, 867 A.2d at 567; *see also Jackson*, 955 A.2d at 444. On this record, we agree with the trial court that there was sufficient evidence, viewed in the light most favorable to the Commonwealth, establishing that Appellant was the person in the video compilation wearing the shiny black jacket. *See Smyser*, 195 A.3d 912, 915. Also, we agree that the evidence was sufficient to show that Appellant, and at least one other shooter, took a substantial step toward the commission of a killing when Appellant used his handgun to fire in the direction of the victim. *See Predmore*, 199 A.3d at 929. Lastly, Appellant's specific intent to kill can be inferred because the victim was shot in the head, a vital part of the body. *See id.* at 931; *Talbert*, 129 A.3d at 543. For these reasons, we conclude that Appellant is not entitled to relief on this claim.

## Weight of the Evidence

Appellant also argues that the verdict is against the weight of the evidence. Appellant's Brief at 37-39.

Before reaching the merits of this claim, we must address whether the claim is preserved for our review. It is well settled that a defendant must raise a weight-of-the-evidence challenge before the trial court in order to preserve the issue. *See* Pa.R.Crim.P. 607 (stating that "[a] claim that the

verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion" (some formatting altered)); *see also Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009) (holding that although the defendant "included an issue challenging the verdict on weight of the evidence grounds in his [Rule] 1925(b) statement . . . [the defendant] did not preserve his weight of the evidence claim for appellate review in the absence of an earlier motion" challenging the weight of the evidence (citations omitted and formatting altered)).

Here, our review of the record reflects that Appellant did not challenge the weight of the evidence at any point prior to sentencing or in a post-sentence motion. Therefore, this issue is waived, and Appellant is not entitled to relief on this claim. *See* Pa.R.Crim.P. 607(A); *Sherwood*, 982 A.2d at 494.

## Rule 600

In his next claim, Appellant argues that the trial court erred by denying his motion to dismiss the charges pursuant to Pa.R.Crim.P. 600(A). Appellant's Brief at 54-55. Specifically, Appellant asserts that "the Commonwealth failed to bring [him] to trial within 365 days." *Id.* at 54. Appellant concludes that "the charges against [him] should have been dismissed in their entirety." *Id.*

Before we address the merits of this claim, we must determine if Appellant has properly developed it for appellate review. *See Edmondson*, 718 A.2d at 753 n.7 (explaining that appellate courts may raise the issue of waiver *sua sponte*). This Court has explained that when presenting issues in an appellate brief, "it is an appellant's duty to present arguments that are sufficiently developed for our review." *Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (citation omitted); *see also Taylor*, 277 A.3d at 591 (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review[,] that claim is waived" (citation omitted and some formatting altered)); Pa.R.A.P. 2119(a), (c) (providing that the argument section of an appellate brief shall contain discussion of issues raised therein, citation to pertinent legal authorities, and references to the record).

Further, this Court has stated that "[w]e shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived." *Commonwealth v. Cannavo*, 199 A.3d 1282, 1289 (Pa. Super. 2018) (citations and quotation marks omitted); *see also Kane*, 10 A.3d at 331 (explaining that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived" (citing Pa.R.A.P. 2101)). The *Cannavo* Court

- 16 -

explained that the defendant's "mere quotation of [case law], fails to provide this Court with any meaningful application of [that case law] with the relevant facts. As we will not make [the defendant's] arguments for him, we deem this claim waived." ***Cannavo***, 199 A.3d at 1289.

Here, we conclude that Appellant has failed to adequately develop his Rule 600 claim for appellate review. Although Appellant cites case law applicable to Rule 600, he has not provided any discussion of the time periods relevant to his claim nor any analysis of any periods of delay where Appellant contends that the Commonwealth failed to exercise due diligence. Lastly, Appellant does not discuss any evidence presented at the Rule 600 hearing nor any citations to the record of that hearing. ***See Kane***, 10 A.3d at 331; ***Cannavo***, 199 A.3d at 1289. Accordingly, we conclude that Appellant waived this issue on appeal.

## Quashal of Charges

In his next claim, Appellant argues that the trial court erred by denying his motion to quash the charges of attempted murder and aggravated assault because the Commonwealth failed to establish a *prima facie* case with respect to those charges at the preliminary hearing. Appellant's Brief at 50-51.

The Commonwealth responds that this issue is moot because "it is well-settled that an adjudication of guilt beyond a reasonable doubt at trial 'renders moot any allegation that the Commonwealth failed to establish a *prima facie* case' at the pre-trial stage." Commonwealth's Brief at 22 (citing, *inter alia*, ***Commonwealth v. Lee***, 662 A.2d 645, 650 (Pa. 1995)). The Commonwealth

concludes that "[b]ecause [Appellant] was found guilty of the attempted murder and aggravated assault charges at trial, his claim is patently meritless." *Id.*

Whether an issue is moot presents a question of law; therefore, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Dixon*, 907 A.2d 468, 472 (Pa. 2006).

In *Lee*, our Supreme Court explained that

a finding at a preliminary hearing that sufficient evidence exists to require a defendant to stand trial is not subject to review if there has been a subsequent independent judicial judgment that there is sufficient evidence to require the defendant to stand trial. Thus, [the defendant's] adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a *prima facie* case [at the preliminary hearing].

*Lee*, 662 A.2d at 650.

Although the trial court did not expressly discuss mootness, it explained that Appellant was not entitled to relief on this claim because "the Commonwealth . . . proved beyond a reasonable doubt that Appellant was guilty of attempted murder and aggravated assault." Trial Ct. Op. at 27.

Based on our review of the record, we agree with the Commonwealth and the trial court that Appellant's convictions for attempted murder and aggravated assault at trial renders Appellant's claim with respect to the preliminary hearing moot. *See Lee*, 662 A.2d at 650. Therefore, he is not entitled to relief.

## Suppression

Appellant presents three claims related to the denial of his motion to suppress evidence; therefore, we discuss them together. First, Appellant argues that the trial court erred by not suppressing his statements because the detectives failed to advise him of his **Miranda** rights. Appellant's Brief at 40-41. Specifically, Appellant contends that "[i]n the case *sub judice*, [Appellant] asserted his right to speak to counsel prior to speaking with the detectives. Consequently, unwarned statements that are otherwise voluntary under the Fifth Amendment must be excluded from evidence under **Miranda**." **Id.** at 41 (citation omitted).

Second, Appellant contends that physical evidence recovered from 2402 North Cleveland Street should have been suppressed because his arrest was illegal.[7] **Id.** at 43-50. Specifically, Appellant asserts that he "was taken into custody on December 30, 2020 prior to the recovery of any evidence or contraband in 2402 North Cleveland Street." **Id.** at 50. Therefore, Appellant concludes that "any evidence or contraband obtained thereafter should have been inadmissible[]" as fruit of the poisonous tree. **Id.**

Third, Appellant claims that his statements to the detectives should be suppressed because his arrest was illegal. **Id.** at 51-53.

_____

[7] Although Appellant refers to having filed a motion to dismiss in the trial court, Appellant's argument in his appellate brief clearly addresses suppression, not dismissal. **See** Appellant's Brief at 50 (arguing that "Pennsylvania's decisional law has long held that evidence seized as a result of an unlawful arrest must be excluded" (citation and quotation marks omitted)).

Here, we conclude that Appellant has failed to adequately develop his ***Miranda*** claim for appellate review. Although Appellant cites case law applicable to ***Miranda*** warnings in his brief, Appellant's analysis consists of a boilerplate assertion that he exercised his right to speak to counsel prior to speaking with the detectives and does contain any discussion of, or citations to, the record. Next, Appellant failed to adequately develop his claim of an illegal arrest because he has not applied any of the legal authority he has cited regarding warrantless arrests to the relevant facts, nor has Appellant cited to the record. Accordingly, we conclude that Appellant waived these issues on appeal. ***See Taylor***, 277 A.3d at 591; ***Cannavo***, 199 A.3d at 1289; ***Kane***, 10 A.3d at 331.

**Evidentiary Issue: Officer Berger's Testimony**

Appellant argues that the trial erred by denying his motion *in limine* to exclude Officer Berger's testimony about his prior interaction with Appellant. Appellant's Brief at 42-43. Specifically, Appellant contends that "[r]eference during trial to [Appellant's] interaction with Officer Kenneth Berger . . . on September 2, 2020 violated Rule 403 of the Pennsylvania Rules of Evidence, since the probative value of the evidence is outweighed by the unfair prejudice that is caused by it being admitted. This clearly prejudiced [Appellant]." ***Id.*** at 43.

The Commonwealth responds that "[a]t trial, [Appellant] stipulated that Officer Berger would testify to being shown a video of the suspect and identifying [Appellant] as that person. Any mention of [Appellant's] prior

interaction with Officer Berger was not referenced at trial . . . ." Commonwealth's Brief at 19 (citing N.T. Trial, 9/9/24, at 90).[8]  Therefore, the Commonwealth concludes that Appellant has waived this issue.  *Id.*

It is well-established that a stipulation to a fact waives any claim of error regarding the admission of that fact.  *See Commonwealth v. Lemanski*, 529 A.2d 1085, 1097 (Pa. Super. 1987) (stating that "[t]he parties are bound to accept the facts to which they have stipulated" (citations omitted)).

Here, the trial court explained that

> at trial, there was a stipulation between the parties that if Officer Berger came to testify, he would identify Appellant as one of the shooters in the video.  Thus Appellant is not entitled to relief.

Trial Ct. Op. at 25.

Our review of the record reflects that both Appellant's counsel and the Commonwealth stipulated that if Officer Berger was called to testify, he "would testify at the time of this incident he was working as a Philadelphia Police Officer, shown a man [and asked to] identify the male in the video.  Based on further identification it was determined to be [Appellant]."  N.T. Trial, 9/9/24, at 90.  Therefore, we agree with the trial court that Appellant has waived this issue and is not entitled to relief.  *See Lemanski*, 529 A.2d at 1097.

---

[8] The Commonwealth's brief contains a typographical error and cites to the notes of testimony for September 10, 2024 instead of September 9, 2024.

**Evidentiary Issue: Discovery Materials**

Appellant next argues that the trial court erred by denying his motion to exclude evidence that the Commonwealth failed to produce in discovery. Appellant's Brief at 56-57. Specifically, Appellant contends that the trial court should have excluded Appellant's mugshot from a prior arrest, Officer Berger's 75-48A Investigation Report, and any testimony related to that report. *Id.* at 57.

Here, we conclude that Appellant has failed to adequately develop this claim for appellate review. Although Appellant cites case law relevant to motions *in limine* generally, he fails to cite any case law or rules of procedure related to the Commonwealth's discovery obligations. Further, Appellant's argument does not discuss any of the relevant facts, nor has Appellant provided any citation to the record. *See Taylor*, 277 A.3d at 591; *Cannavo*, 199 A.3d at 1289; *Kane*, 10 A.3d at 331; Therefore, we conclude that Appellant waived this issue on appeal.

**Evidentiary Issue: Lay Opinion Testimony**

Next, Appellant contends that the trial court erred by denying his motion *in limine* to exclude any lay opinion testimony by Detective Waring and Officer Berger identifying Appellant as one of the shooters in the video. Appellant's Brief at 55-56. Appellant acknowledges that lay witnesses may offer opinion testimony that is rationally related to the witnesses' perception when that opinion testimony is helpful to the fact-finder. *Id.* (citing Pa.R.E. 701; *Commonwealth v. Berry*, 172 A.3d 1, 3-4 (Pa. Super. 2017)). Appellant

further contends that lay identification testimony is more likely to be admissible where the photograph or video is of poor quality. *Id.* at 56 (citing *United States v. Dixon*, 413 F.3d 540, 545 (6th Cir. 2005); *United States v. Shabazz*, 564 F.3d 280 (3rd Cir. 2009)). Appellant concludes that Detective Waring's testimony identifying Appellant in a video was inappropriate because that was a matter for the jury to decide. *Id.*

We review evidentiary rulings for an abuse of discretion. *See Commonwealth v. Thompson*, 314 A.3d 922, 926 (Pa. Super. 2024). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017) (citation omitted).

Pennsylvania Rule of Evidence 701 provides, in relevant part:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of [Pa.R.E.] 702 [(governing testimony by expert witnesses)].

Pa.R.E. 701.

"Pennsylvania Rule of Evidence 704 clearly permits both expert and lay opinion testimony on issues that ultimately must be decided by the trier of

- 23 -

fact, in this case, the jury." ***Commonwealth v. Huggins***, 68 A.3d 962, 967 (Pa. Super. 2013); ***see also*** Pa.R.E. 704 (stating that "[a]n opinion is not objectionable just because it embraces an ultimate issue").

This Court has held that a detective's testimony identifying the defendant as the shooter in video footage was permissible lay opinion testimony, and that testimony did not divert the jury from its duty to weigh the evidence impartially. ***See Commonwealth v. Palmer***, 192 A.3d 85, 100-01 (Pa. Super. 2018). Specifically, the ***Palmer*** Court held that the detective's "testimony about the videos was based upon his perception of them, placed his subsequent actions in context, and was helpful in allowing the jury to reach a clear understanding of all his testimony." ***Id.*** at 101 (citation omitted). Further, this Court explained that "it was the jury's duty to determine if the Commonwealth proved that fact beyond a reasonable doubt. The jury itself watched the videos, and was free to reach a different conclusion if it disagreed with [the detective's] conclusion that" the person depicted in the video was the defendant. ***Id.***

Lastly, we note that the "[d]ecisions of federal circuit courts are not binding, but may be given persuasive effect by courts of this Commonwealth." ***Commonwealth v. Little***, 246 A.3d 312, 328 n.18 (Pa. Super. 2021) (citation omitted and some formatting altered).

Here, the trial court explained:

Detective Waring watched hours of video and compared Appellant's physical features to those of the suspect on video. The identifications helped the jury determine that it was in fact

Appellant on the video shown during trial. Most importantly, Appellant identified himself on video. Therefore, the trial court properly denied the motion *in limine*.

Trial Ct. Op. at 31.

Based on our review of the record, we discern no abuse of discretion by the trial court in allowing Detective Waring to offer his lay opinion that Appellant was the person depicted in the video compilation. *See Thompson*, 314 A.3d at 926. Appellant's reliance on federal case law is misplaced because the decisions of the lower federal courts are not binding on the courts of this Commonwealth and only have persuasive value. *See Little*, 246 A.3d at 328 n.18. Here, Detective Waring's testimony about the video compilation was based on his perception of the compilation and provided context for his subsequent actions, *i.e.*, obtaining a search warrant for 2402 North Cleveland Street, where the police found a black coat with a rip on the upper right sleeve that was similar to the one worn by an individual in the video compilation who was holding a gun in the grocery store. *See* N.T., 9/9/24, at 86-88, 94-98. Lastly, the jury also watched the video compilation, and the jury was free to reach a different conclusion about the identity of the person in the video. Accordingly, the trial court did not abuse its discretion in allowing Detective Waring to testify about his lay opinion that the person in the video wearing the shiny black coat was Appellant, and Appellant is not entitled to relief on this claim. *See Palmer*, 192 A.3d at 100-01; *see also Huggins*, 68 A.3d at, 967; Pa.R.E. 704.

**Evidentiary Issue: Videos and Photos**

In his next issue, Appellant claims that the trial court erred by denying his motion *in limine* to exclude video and photographs because the Commonwealth failed to authenticate these exhibits. Appellant's Brief at 58.

The Commonwealth responds that Appellant waived this issue because at trial Appellant stipulated to the admissibility and authenticity of video evidence. Commonwealth's Brief at 25.

It is well settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also Commonwealth v. Bryant*, 855 A.2d 726, 740 (Pa. 2004) (explaining that failure to raise contemporaneous objection to evidence at trial waives the claim on appeal).

Here, the trial court explained that "Appellant stipulated to the authenticity of the videos and photographs shown at trial. Thus, he is not entitled to relief as to this issue." Trial Ct. Op. at 25.

Our review of the record reflects that both Appellant's counsel and the Commonwealth stipulated to the authenticity and admissibility of the video compilation of surveillance cameras, photos taken from that video, and the video of Appellant's interview with police. *See* N.T. Trial, 9/9/24, at 84, 90; N.T. Trial, 9/10/24, at 6. Accordingly, Appellant has waived his claims related to this evidence because he stipulated to its admissibility. *See Lemanski*, 529 A.2d at 1097. Further, Appellant did not object to the admission of the video from Officer Bernard's body-worn camera, the photographs Detective

Waring took of the location where the shooting occurred, the photographs of the victim, photographs taken during the search of 2402 North Cleveland Street, or photographs of Appellant taken after his arrest.  **See** N.T. Trial, 9/9/24, at 43, 61, 76, 98-99, 101-02.  Therefore, Appellant has waived any claims related to the admissibility of that evidence because he did not make a contemporaneous objection at trial.  **See Bryant**, 855 A.2d at 740; Pa.R.A.P. 302(a).  For these reasons, Appellant is not entitled to relief on these claims.

## Merger

Before we address Appellant's discretionary sentencing claim, we must address merger.  "Merger implicates the legality of the sentence, and the legality of a sentence is an issue this Court can raise *sua sponte*.  Further, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Westlake**, 295 A.3d 1281, 1288 (Pa. Super. 2023) (citations omitted); **see also Commonwealth v. Tucker**, 143 A.3d 955, 960 (Pa. Super. 2016) (stating that "[a]n illegal sentence must be vacated" (citation omitted)).

Section 9765 of the Sentencing Code provides as follows:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.  Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

It is well-established that aggravated assault under 18 Pa.C.S. § 2702(a)(1) merges with attempted murder. ***See Commonwealth v. Anderson***, 650 A.2d 20, 24 (Pa. 1994) (stating that "[i]t is clear that the offense of aggravated assault is necessarily included within the offense of attempted murder; every element of aggravated assault is subsumed in the elements of attempted murder"). Further, simple assault merges with aggravated assault for the purposes of sentencing. ***See Commonwealth v. Farrow***, 168 A.3d 207, 215 (Pa. Super. 2017); ***see also Commonwealth v. Sirianni***, 428 A.2d 629, 632-33 (Pa. Super. 1981) (explaining that "[s]imple assault as an attempt to cause mere bodily injury is, . . . a lesser included offense of aggravated assault which is an attempt to cause serious bodily injury" under 18 Pa.C.S. § 2702(a)(2) (footnotes omitted)). Consequently, simple assault also merges with attempted murder. ***See, e.g.***, ***Commonwealth v. Wilkerson***, Nos. 2865 EDA 2022, 2867 EDA 2022, 2024 WL 576742, at *5 (Pa. Super. filed Feb. 13, 2024) (unpublished mem.) (vacating the defendant's sentences for aggravated assault and simple assault because those offenses merged with attempted murder for sentencing purposes).[9]

Lastly, "this Court has held that a sentence of "no further penalty" constitutes a sentence." ***Westlake***, 295 A.3d at 1289; ***see also Farrow***,

---

[9] ***See*** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

168 A.3d at 215 (explaining that "since a court may impose 'guilt without further penalty' as a sentence under 42 Pa.C.S. § 9721(a)(2)," this Court shall treat such dispositions "as sentences for purposes of our double jeopardy analysis"), *disapproved on other grounds by* **Commonwealth v. Hill**, 238 A.3d 399 (Pa. 2020).

Here, the trial court sentenced Appellant to a term of five to ten years' incarceration for attempted murder and imposed a concurrent sentence of ten years' probation for aggravated assault. **See** Sentencing Order, 11/25/24, at 1-2. Additionally, the trial court imposed a sentence of no further penalty for simple assault. **See id.** at 1.

Appellant's sentences for aggravated assault and simple assault should have merged with Appellant's conviction for attempted murder for sentencing purposes. **See Anderson**, 650 A.2d at 24; **Sirianni**, 428 A.2d at 632-33. Therefore, we are constrained to vacate the sentence of ten years' probation for aggravated assault and no further penalty for simple assault as illegal sentences. **See Westlake**, 295 A.3d at 1289; **Farrow**, 168 A.3d at 215.

Since our disposition may upset the trial court's overall sentencing scheme, we vacate Appellant's judgment of sentence on all charges and remand for resentencing. **See Commonwealth v. McCamey**, 154 A.3d 352, 359 (Pa. Super. 2017). Although we vacate Appellant's judgment of sentence in full, we do not disturb Appellant's convictions. **See Commonwealth v.**

*Tighe*, 184 A.3d 560, 563, 585 (Pa. Super. 2018) (affirming convictions but vacating a judgment of sentence in full due to merger).[10]

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/5/2026

---

[10] Because we vacate Appellant's judgment of sentence and remand for resentencing, we do not address Appellant's challenge to the discretionary aspects of his sentence.